# Smith Katzenstein Jenkins LLP

November 1, 2016

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, Delaware 19801-3555

      Re: *Galderma Labs., L.P. et al. v. Dr. Reddy's Labs. et al.*, C.A. No. 15-670 (LPS)

Dear Chief Judge Stark:

      We are counsel for Defendants in the above-captioned action, and write pursuant to this Court's orders of October 26 and 28 (D.I. 96, 98). The following six discovery issues are currently awaiting resolution (the second issue listed in D.I. 81 has become moot):

1. Defendants' motion to compel production of the transcripts and exhibits from Mylan's depositions of the named inventors of the "Amin Patents" (D.I. 78);

2. Plaintiffs' motion to compel responses to Interrogatories 11-15 (D.I. 78);

3. Plaintiffs' motion to compel supplemental responses to Interrogatories 1, 2 (D.I. 78);

4. Plaintiffs' motion to quash the deposition subpoena of Brian Gallagher (D.I. 81);

5. Plaintiffs' motion to quash the deposition subpoena of Robert A. Ashley (D.I. 93);

6. Plaintiffs' motion to quash the deposition subpoena of Christopher Powala (D.I. 93).

As it is Plaintiffs that seek relief on issues 2-6, Defendants will address here only issue 1, and will respond on November 3 to Plaintiffs' positions on issues 2-6.

## Background

      While the substance of issue 1 is itself straightforward and relatively simple, the context in which it arises is important to an appreciation of the difficulties Defendants have faced in their efforts to expedite resolution of this case. Accordingly, we provide that context below.

      The Rule 16 conference was held on December 22, 2015. (D.I. 22.) At that time, Defendants were proposing a schedule aimed at an early resolution on eight of the ten asserted patents. (*See* D.I. 21.) Despite the fact that Defendants' goal was to narrow the issues in dispute and promote an efficient resolution of the case, Plaintiffs opposed that approach. Since the entry of the scheduling order on January 15, 2016 (D.I. 24), that dynamic has remained unchanged. Defendants have attempted to obtain discovery on critical issues including conception, reduction to practice, and invalidity, and Plaintiffs have consistently opposed and delayed those attempts. The timing of the current discovery motion is a direct result of Plaintiffs' efforts in this regard.

      Indeed, issue 1 has its roots in Defendants' first set of requests for production, which were served nearly seven months ago on April 6, 2016. (Exh. 1.) In particular, the deposition transcripts and exhibits that Plaintiffs are currently objecting to producing are directly responsive to Defendants' Request for Production ("RFP") No. 40, which sought "[a]ll deposition testimony and deposition exhibits from the *Mylan* cases (*i.e.*, District of Delaware Action

Nos. 1:09-cv-00184 and 1:10-cv-00892)." (Exh. 2, at 50-51.) When Plaintiffs initially responded on May 9, 2016, they objected to producing anything in response to RFP 40 unless Defendants would first agree to "refrain from pursuing duplicative and/or similar document and written discovery of Galderma; refrain from taking depositions of the named inventors of the patents-in-suit or other individuals who have previously been deposed in connection with the *Mylan* or *Amneal* Actions; and limit any follow-up document requests to requests for specific documents as opposed to categories of documents, and only to the extent that DRL believes there are additional specific documents that are pertinent to the disputed issues in this litigation." (*Id.* at 51.) Notably, Plaintiffs made this same conditional proffer in response to 16 other requests for production (*i.e.*, RFPs 1-4, 6-9, 18, 26-29, and 41-43), and then simply refused altogether to produce documents in response to another 29 requests (*i.e.*, RFPs 10-17, 19-25, 30-32, 34-39, and 44-48). (*Id.* at 7-48.) As a result, in total, Plaintiffs only initially agreed to respond to *portions* of four of Defendants' 48 requests (*i.e.*, RFPs 5-7, 33). (*Id.* at 12-16, 46.)

Defendants promptly moved to address these issues (as well as several others relating to Plaintiffs' interrogatory responses), sending a detailed letter just ten days later on May 19, 2016. (Exh. 3.) Because Plaintiffs' initial positions were so extreme, Defendants opened the letter by asking for a meet-and-confer in the next day or two to explore whether there were any issues that could be resolved without the need for further written correspondence. (*See id.* at 1.) However, Plaintiffs steadfastly refused to engage in a meet-and-confer until they had addressed every issue in writing. (Exh. 4.) Plaintiffs ultimately provided a letter response almost three weeks later on June 6 (Exh. 5), and, after a further explanation from Defendants, agreed to a meet-and-confer on June 8 (Exh. 6).

Not surprisingly, Plaintiffs ultimately capitulated on many of their positions, and agreed to produce, amongst other things, "all deposition transcripts for named inventors of the patents-in-suit or current or former Galderma or CollaGenex employees from the *Mylan* and *Amneal* Actions, including exhibits." (*See, e.g.*, Exh. 5, at 2.) Defendants followed up with an email the day after their meet-and-confer (June 9), asking Plaintiffs to confirm when production would begin, and noting that it should be possible to do so quickly given that most or all of the materials were already in production form from the *Mylan* action. (Exh. 7, at 4-6.) Plaintiffs did not respond to that email, necessitating a follow-up email on Friday, June 17. (*Id.* at 4.) Only then did Plaintiffs provide a date for their first production — July 1, 2016. (*Id.* at 2-3.)

Notwithstanding that commitment, Plaintiffs then raised a prosecution bar issue one week later on June 24. (*See* Exh. 8.) Despite the fact that Defendants promptly provided all necessary assurances by June 29 (*see* Exh. 9, at 5), Plaintiffs demanded a meet-and-confer, then refused to meet until July 5 (*id.* at 2), and then maintained their objections another two days (*see* Exhs. 10, 11.) Plaintiffs' first responsive production was thus not until July 7. (*See* Exh. 12.)

Although Plaintiffs had promised to produce deposition testimony from the *Mylan* action, their July 7 production did not contain a single deposition transcript. After Defendants determined this to be the case, the issue was promptly raised in an email on July 19. (*See* Exh. 13, at 5-6.) Plaintiffs, however, waited until July 29 to respond, and then stated, without explanation, that "Plaintiffs' document production efforts are ongoing, and Plaintiffs intend to make their next production of documents on or by August 15." (*Id.* at 4-5.) And while Defendants pressed for an earlier production both in writing and in a meet-and-confer on

The Honorable Leonard P. Stark
Page 3

August 2, they were ultimately forced to wait until August 15 to receive their first deposition transcripts. (*Id.* at 1-3; Exh. 14.)

Remarkably, even *that* production was not as promised. Defendants were thus forced to write again on August 17 to point out that they were still missing transcripts of the Chang Patent Inventors, as well as those of all other third party witnesses deposed in the *Mylan* action. (*See* Exh. 15, at 15.) Plaintiffs thereafter continued to capitulate in stages, necessitating further written communications, and, ultimately, another meet-and-confer on August 24. (*See id.* at 8-14.) Following that call, it then took several more emails, and a close reading of Plaintiffs' statement that "there are no other third-parties who had depositions taken in the *Mylan* actions *in connection with any of the patents-in-suit in this case*," before Defendants finally learned that Plaintiffs would not be producing the transcripts and exhibits of Mylan's depositions of the named inventors of the Amin Patents. (*See id.* at 1-8.) After one last unsuccessful attempt to resolve the issue in a meet-and-confer on September 2 — nearly five months after first requesting production of the documents in question — the parties declared an impasse. (*See* Exh. 16, at 7-14.) Defendants then circulated a draft joint letter for Plaintiffs' consideration that same day. (*Id.* at 7.) Nevertheless, because of Plaintiffs' further revisions to that draft, and due to a disagreement with regard to which of Plaintiffs' disputes were ripe for adjudication, it took until September 27 to arrive at a final form of the letter that became D.I. 78. (*See id.* at 1-6.)

### **Issue 1: Transcripts And Exhibits Of Amin Patent Inventor Depositions**

Thankfully, while the history of this dispute is complicated, its substance is very simple. The Amin Patents were Orange-book listed patents that were asserted in the *Mylan* action. *See Research Found. of State Univ. of N.Y. v. Mylan Pharm. Inc.*, 809 F. Supp. 2d 296, 298 (D. Del. 2011). This Court found both that they were not infringed, and also invalid. *Id.* at 325-29. The Federal Circuit then affirmed this Court's findings on all issues, except insofar as it vacated the finding of anticipation as to three dependent claims. *See Research Found. of State Univ. of N.Y. v. Mylan Pharms., Inc.*, 531 F. App'x 1008, 1011 (Fed. Cir. 2013).

While the Amin Patents are not asserted here, they nevertheless unquestionably pertain to the same subject matter at issue here, *i.e.*, low-dose doxycycline. As a result, any prior art that would have been relevant to the Amin Patents would, at a minimum, also be related, if not highly relevant, to the patents asserted in this action. Moreover, the Amin Patents' inventors include Dr. Lorne Golub, who is the author of several critical prior art references on which Defendants are presently relying. Finally, Dr. Golub and at least two other named inventors are understood to have collaborated with members of CollaGenex when they were first developing Periostat. Indeed, for these very reasons, Defendants have subpoenaed the deposition of Dr. Golub in this action to explore issues relating to prior art, conception, and reduction to practice.

In view of the foregoing, Defendants respectfully submit that the transcripts and exhibits from Mylan's depositions of the named inventors on the Amin Patents are clearly relevant, and should thus be produced. Defendants thus respectfully request that Plaintiffs be ordered to do so.

The Honorable Leonard P. Stark
Page 4

                                      Respectfully submitted,

                                      */s/ Eve H. Ormerod*

                                      Eve H. Ormerod (#5369)

Enclosures

cc:    Clerk of Court (via ECF Service)
        Counsel of Record (via ECF Service)